TEODOSIO, Judge.
{¶ 1} Dr. Delphi Toth appeals the judgment entered by the Medina County Court of Common Pleas on October 26, 2015. We affirm in part, and reverse and remand in part.
I.
{¶ 2} In November 2011, the thirteen-year-old daughter of Frances Slyman ("M.S.") answered an ad for farm help that she had seen posted on a bulletin board at the Valley Tack Shop. The ad had been placed by Dr. Toth, who subsequently hired the girl after interviewing her in person. The job entailed working at Dr. Toth's two horse barns: cleaning the horses' stalls, feeding the horses, and letting the horses out. Ms. Slyman drove her daughter to Dr. Toth's barns each day that M.S. worked and would wait there for her to finish. Dr. Toth was present as well, and would converse with Ms. Slyman and her daughter.
{¶ 3} A friendly relationship developed between Dr. Toth and M.S., with e-mails being exchanged between the two on a regular basis. M.S. also became very fond of one of Dr. Toth's horses: a Lipizzan stallion named Siglavy Kerka, but known more commonly as "Laci." The Lipizzan is a unique and rare breed of horse, to which Dr. Toth had devoted much of her nonprofessional time, including sitting as the Chair of the Board of the Lipizzan Association of North America ("LANA"). Dr. Toth began sharing her knowledge of the breed with M.S., e-mailing her pictures and videos of the breed, and giving her books about its history. Dr. Toth also assisted M.S. in writing an article for the LANA magazine, Haute Ecole, about her experiences with Laci. The article, entitled "Getting to Know You," was published in the magazine on the same page as an editorial box stating: "The above article was written by LANA's newest and youngest member about the thrill of having her first Lipizzan stallion." That December, Dr. Toth gave M.S. a Christmas present consisting of a framed copy of Laci's pedigree, with the ownership box stating: "Owned By: Delphi Toth & [M.S.]."
{¶ 4} In March 2012, Laci was taken to be gelded by Ms. Slyman, who then returned the horse to Dr. Toth. Dr. Toth paid for the procedure. That spring, it was agreed that Ms. Slyman and M.S. would take Laci to a training facility in Marietta, Ohio. While in Marietta, Laci developed colic, and was taken to a veterinary hospital for treatment. After his release from *1211 the hospital, Ms. Slyman paid for the treatment and returned the horse to her own barn.
{¶ 5} In June 2012, the relationship between Dr. Toth and Ms. Slyman became significantly strained after an apparent misunderstanding regarding Ms. Slyman's request to use some of Dr. Toth's hay. Soon thereafter, Ms. Slyman sent Dr. Toth an e-mail stating that she didn't know how much longer her daughter would be able to work for Dr. Toth, and that she would attempt to find a replacement. On June 8, 2012, M.S. sent Dr. Toth an e-mail expressing a desire to continue their friendship and thanking her for the experience of learning about the Lipizzan breed. Specifically, she wrote: "[W]hat I really want to thank you for is the experience of having my own[.] [T]here are no words to explain my thank you[.] [L]aci is a wonderful horse[.] [H]e has a lot of background on him[.] [H]e is going to make a fantastic partner[.] * * * I hope you will continue to help me with [L]aci and teach me more about classical dressage[.]"
{¶ 6} On June 10, 2012, Dr. Toth received an e-mail from M.S.'s account stating: "Good Evening Delphi, [n]ow that Laci is officially mine and [l]iving in our barn, [c]ould I please have the original set of his papers, with my name transfer[r]ed on them as the real owner? As well as his passport, [s]o we can add them to our horses['] files[?] Thank You, [M.S.]."
{¶ 7} In July 2012, Ms. Slyman sent Dr. Toth a text suggesting that it would be a nice gesture if Dr. Toth surprised M.S. with Laci's papers for her upcoming birthday. On July 11, 2012, Dr. Toth sent an e-mail to Ms. Slyman in response, stating in part:
Last Christmas, I offered to add [M.S.]'s name to Laci's papers. I told you and her that I was doing this primarily so that if I died soon, this young horse could be transferred, after my death, from my name to hers, without difficulty. * * *
At no time did I say I was removing my name from his papers as the primary owner. I only offered to add her name. I have never indicated otherwise.
This arrangement should not have been a problem. You yourself described this as a free lease of the horse, with you not paying a monthly fee to me to lease the horse from me, and me not paying any of his on-going expenses.
Since I have not yet died, if you do not want my name on his papers, then the only option is for me to simply sell Laci to you.
In response to this communication, Ms. Slyman called Dr. Toth and left a voicemail message indicating that they had never discussed a lease, that Dr. Toth had given her daughter the horse, and that she wanted Dr. Toth to sign Laci's papers over to her so that her daughter could register Laci. She also sent Dr. Toth an e-mail, again stating that the horse had been given to her daughter, asking for Laci's papers, and accusing Dr. Toth of being manipulative. In the following weeks, more e-mails were exchanged, and Dr. Toth wrote a letter asking for the return of Laci, which Ms. Slyman denies having ever received. We note that during the course of events, conversations are alleged to have taken place that are disputed by the other side.
{¶ 8} In December 2012, Ms. Slyman, as the next best friend of her minor daughter, filed a complaint for declaratory judgment, seeking to be declared Laci's sole and lawful owner. Dr. Toth filed her answer and a counterclaim for conversion of property. Over the course of the litigation, Ms. Slyman added claims for promissory estoppel and unjust enrichment, and Dr. Toth added claims for declaratory judgment, fraud, unjust enrichment, bailment, breach of fiduciary duty, abuse of process, and *1212 loss of consortium. In November 2014, the trial court held a bench trial on the bifurcated declaratory judgment claims and found that Dr. Toth had not given Laci to the Slymans and that Dr. Toth retained sole legal ownership of the horse. Ms. Slyman, upon order of the court, returned Laci to Dr. Toth.
{¶ 9} In October 2015, a jury trial commenced on the remaining claims. The trial court entered a directed verdict in favor of Dr. Toth on Ms. Slyman's claim for promissory estoppel. Directed verdicts were entered in favor of Ms. Slyman on Dr. Toth's claims for fraud, unjust enrichment, bailment, breach of fiduciary duty, abuse of process, and loss of consortium. At the conclusion of deliberations, the jury returned a verdict in favor of Ms. Slyman on her remaining claim for unjust enrichment and awarded her zero dollars. The jury returned a verdict in favor of Dr. Toth on her remaining claim for conversion and again awarded zero dollars. The trial court entered final judgment on October 26, 2015. Dr. Toth now appeals, raising five assignments of error.
II.
ASSIGNMENT OF ERROR ONE
THE TRIAL COURT MISAPPLIED THE LAW WHEN IT HELD THAT DELPHI TOTH COULD NOT RECOVER ATTORNEY FEES AND EXPENSES INCURRED TO RECOVER CONVERTED PROPERTY AS A COMPONENT OF COMPENSATORY DAMAGES REGARDLESS OF THE AVAILABILITY OF PUNITIVE DAMAGES, AND AS A RESULT, DEPRIVED DR. TOTH OF HER CONSTITUTIONAL RIGHT TO A TRIAL BY JURY ON THE FULL MEASURE OF HER DAMAGES FOR THE WRONGFUL CONVERSION OF LACI.
{¶ 10} In her first assignment of error, Dr. Toth argues the trial court erred in ruling that she could not present evidence of attorney fees incurred to secure Laci's return prior to a potential punitive damages stage of the trial. We disagree.
{¶ 11} This Court reviews questions of law under a de novo standard. State v. Trifari, 9th Dist. Medina No. 08CA0043-M, 2009-Ohio-667, 2009 WL 372265, ¶ 12. In support of her argument, Dr. Toth relies on Fulks v. Fulks , 95 Ohio App. 515, 520, 121 N.E.2d 180 (4th Dist.1953), which provides:
Attorney fees incurred by the plaintiff in the prosecution of this action are not recoverable since the plaintiff is not seeking punitive damages, but attorney fees spent in recovering possession of the [converted property], which is properly pleaded in this case, is a proper item of special damages * * *.
In the present case, Dr. Toth provides no evidence or argument that she is seeking attorney fees incurred prior to the filing of this action by Ms. Slyman or seeking attorney fees otherwise separate from this action. Thus, even if this Court were to consider adopting the analysis set forth in Fulks , it does not appear the analysis would apply, as the attorney fees incurred by Dr. Toth have been in the prosecution, as well as the defense of, the present action. We are also not inclined to depart from the American Rule, which provides that a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation, with exceptions to the rule provided for by statute, contractual language, and punitive damages claims. Schiavoni v. Roy , 9th Dist. Medina No. 11CA0108-M, 2012-Ohio-4435, 2012 WL 4472225, ¶ 31. None of the exceptions are applicable to the issue presented to us in this assignment of error.
*1213 {¶ 12} We conclude the trial court did not err in ruling that Dr. Toth could not present evidence of attorney fees prior to a potential punitive damages stage of the trial. Dr. Toth's first assignment of error is overruled.
ASSIGNMENT OF ERROR TWO
THE TRIAL COURT USURPED THE ROLE OF THE JURY BY DIRECTING A VERDICT AGAINST DEFENDANT-APPELLANT DELPHI TOTH ON HER COUNTERCLAIMS FOR FRAUD, UNJUST ENRICHMENT, BREACH OF FIDUCIARY DUTY AND LOSS OF CONSORTIUM.
{¶ 13} In her second assignment of error, Dr. Toth argues the court erred in directing verdicts against her counterclaims for fraud, unjust enrichment, breach of fiduciary duty, and loss of consortium.
{¶ 14} "Under Civ.R. 50(A)(4), a motion for a directed verdict should be granted if 'the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " Jones v. MTD Consumer Group, Inc. , 2015-Ohio-1878, 32 N.E.3d 1030, ¶ 21, quoting Bennett v. Admr., Ohio Bur. of Workers' Comp. , 134 Ohio St.3d 329, 2012-Ohio-5639, 982 N.E.2d 666, ¶ 14, quoting Civ.R. 50(A)(4). "By the same token, if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." Hawkins v. Ivy , 50 Ohio St.2d 114, 115, 363 N.E.2d 367 (1977). Because a motion for directed verdict presents a question of law, this Court's review is de novo. Jackovic v. Webb , 9th Dist. Summit No. 26555, 2013-Ohio-2520, 2013 WL 3128281, ¶ 6.
Fraud
{¶ 15} Dr. Toth first argues that a directed verdict should not have been granted against her as to her claim for fraud. We agree.
{¶ 16} "The elements of fraud are: '(1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.' " Glenmoore Builders, Inc. v. Smith Family Trust , 9th Dist. Summit No. 24299, 2009-Ohio-3174, 2009 WL 1862541, at ¶ 51, quoting Baughman v. State Farm Mutual Auto. Ins. Co. , 9th Dist. Summit No. 22204, 2005-Ohio-6980, 2005 WL 3556406, at ¶ 12. "An action in fraud will only be found if all of the elements are present and 'the absence of one element is fatal to recovery.' " Goodman Beverage Co., Inc. v. Kerr Beverage Co. , 9th Dist. Lorain No. 02CA008142, 2003-Ohio-2845, 2003 WL 21290881, at ¶ 21, quoting Westfield Ins. Co. v. HULS Am., Inc. , 128 Ohio App.3d 270, 296, 714 N.E.2d 934 (10th Dist.1998).
{¶ 17} In support of her argument, Dr. Toth states that she was initially reluctant to allow the Slymans to take Laci to Marietta, Ohio, for training, but that Ms. Slyman induced her to relinquish physical custody of the horse by falsely assuring her that the Slymans' possession would only be temporary and that the horse would be safely returned to Dr. Toth upon the completion of training.
*1214 {¶ 18} Evidence was presented of a representation material to the transaction at hand, namely, that Ms. Slyman represented to Dr. Toth that Laci would be brought back in good condition: "She told me she promised and promised that the horse would be fine, and if anything at all would happen, she would bring it right back; that he would be safe and he would be well[ ]taken care of and brought back fine and as good as he was when he left." There is also evidence of justifiable reliance, as Dr. Toth testified that she "was expressing some concern that the training was-it was worrying me, * * * and she assured me that horse would be fine. She promised, promised." The evidence of a resulting injury was that the horse was not returned to Dr. Toth.
{¶ 19} With regard to whether the representation was made falsely with the intent of misleading Dr. Toth into relying upon it, Dr. Toth argues that there is substantial circumstantial evidence to satisfy these elements. Under Dr. Toth's theory of the case, the cumulative evidence suggests a narrative whereby Ms. Slyman manipulated the situation in order to take possession of the horse without any intent to return it to Dr. Toth. "[A] claim of fraud cannot be predicated upon promises or representations relating to future actions or conduct." Martin v. Ohio State Univ. Found. , 139 Ohio App.3d 89, 98, 742 N.E.2d 1198 (10th Dist.2000). "An exception to this rule exists, however, where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." Williams v. Edwards , 129 Ohio App.3d 116, 124, 717 N.E.2d 368 (1st Dist.1998). Although "a fraudulent intent not to perform a promise cannot be inferred merely from the fact of nonperformance, * * * that fact may, when coupled with evidence of other pertinent circumstances, support an inference of lack of intent to perform at the time the promise was made." First Nat'l Bank of Omaha v. iBeam Solutions, LLC , 2016-Ohio-1182, 61 N.E.3d 740, ¶ 46, quoting Gelzer Sys. Co., Inc. v. Indus. Mach. & Supply Co. , 10th Dist. Franklin No. 84AP-1156, 1986 WL 2488, *5 (Feb. 20, 1986). "An intention not to perform may be inferred from the fact that, after performance by the promisee, the promisor does not even make a pretense of carrying out his promise, or evades and refuses to perform it." Id.
{¶ 20} Evidence was presented that Ms. Slyman was either under the impression the horse had been given to her daughter prior to her taking the horse to Marietta for training, or had chosen to purposefully misconstrue Dr. Toth's intentions. Under Ms. Slyman's own theory of the case, there is evidence that supports the idea that at the time of her taking possession of Laci to take him for training in Marietta, Ms. Slyman had a subjective belief that Dr. Toth had gifted the horse to M.S. As to her understanding of why Laci was gelded in early March of 2012, she testified: "The horse is being gelded so that we can have the horse." She also testified that she had told Dr. Toth that in order for her daughter to have the horse, Laci would have to be gelded and trained. In addition, the initial complaint filed by Ms. Slyman stated that she took "exclusive possession" of Laci on March 26, 2012, despite the fact that Ms. Slyman later testified that assertion was inaccurate.
{¶ 21} We are mindful of the fact that to survive directed verdict, Dr. Toth did not have to prove her claims by a preponderance of the evidence. Rather, the court must construe the evidence most strongly in favor of the party against whom the motion is directed, and grant the motion only upon finding that as to any determinative issue, reasonable minds could only come to a conclusion adverse to the nonmoving *1215 party. There was evidence regarding Ms. Slyman's conduct that supported an inference of lack of intent to return the horse at the time the promise was made. Likewise, this lack of intent may be inferred from evidence that Ms. Slyman did not make a pretense of carrying out the promise to return the horse and evaded or refused to return it. We conclude that, construing the evidence most strongly in favor of Dr. Toth, there is substantial competent evidence to support her claim for fraud, upon which evidence reasonable minds might reach different conclusions. The trial court therefore erred in directing a verdict against Dr. Toth on her claim for fraud.
Unjust Enrichment
{¶ 22} Dr. Toth next argues a directed verdict should not have been granted as to her claim for unjust enrichment. We agree
{¶ 23} "Unjust enrichment occurs under Ohio law 'when a party retains money or benefits which in justice and equity belong to another.' " Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio , 40 Ohio St.3d 109, 111, 532 N.E.2d 124 (1988), quoting Stan-Clean of Lexington, Inc. v. Stanley Steemer Internatl., Inc. , 2 Ohio App.3d 129, 131, 440 N.E.2d 1237 (10th Dist.1981). To prevail on a claim of unjust enrichment, a plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment * * *." Hambleton v. R.G. Barry Corp. , 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) ; Chef Italiano v. Crucible Dev. Corp. , 9th Dist. Summit No. 22415, 2005-Ohio-4254, 2005 WL 1963027, ¶ 26.
{¶ 24} Dr. Toth provided evidence that she conferred upon the Slymans the use of Laci for training purposes that would benefit M.S. as well as the horse, and there is evidence that Ms. Slyman had knowledge of this benefit. Likewise there is evidence upon which reasonable minds could reach different conclusions as to whether the benefit was retained by Ms. Slyman under circumstances unjust to do so without payment: a finder of fact could have concluded that retention of the horse had been justified under the circumstances, or could have concluded that the retention was unjust without payment. The trial court's contention that no evidence supports a claim that Dr. Toth conferred a benefit on Ms. Slyman is inaccurate. Although the trial court is correct in stating that Dr. Toth asserted that Ms. Slyman maintained possession of the horse despite her efforts to regain it, it does not change the fact that Dr. Toth had originally consented to Ms. Slyman taking possession of the horse for, at the very least, the purpose of training with M.S., thereby conferring a benefit.
{¶ 25} We conclude that, construing the evidence most strongly in favor of Dr. Toth, there is substantial competent evidence to support her claim for unjust enrichment, upon which evidence reasonable minds might reach different conclusions. The trial court therefore erred in directing a verdict against Dr. Toth on her claim for unjust enrichment.
Breach of Fiduciary Duty
{¶ 26} Dr. Toth next argues that a directed verdict should not have been granted against her on the claim for breach of fiduciary duty. We disagree
{¶ 27} "A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." Strock v. Pressnell , 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988). "To support a breach of fiduciary duty claim, a party must show the existence of a fiduciary relationship, failure to comply with a *1216 duty accorded that relationship, and damages proximately resulting from that failure." Adorno v. Delgado , 9th Dist. Lorain No. 04CA008436, 2004-Ohio-5559, 2004 WL 2348158, ¶ 8. "Whether or not a fiduciary relationship exists depends on the facts and circumstances of each case." Horak v. Nationwide Ins. Co. , 9th Dist. Summit No. 23327, 2007-Ohio-3744, 2007 WL 2119861, ¶ 31. "One does not owe a fiduciary duty to another absent proof of a fiduciary relationship, out of which the duties arise. Ordinarily, in business transactions where the parties deal at arm's length, no fiduciary relationship exists." (Citation omitted.) RPM, Inc. v. Oatey Co. , 9th Dist. Medina Nos. 3282-M, 2005-Ohio-1280, 2005 WL 663057, ¶ 19. "A fiduciary duty may arise out of a contract or an informal relationship, however, where both parties to the transaction understand that a special trust of confidence has been reposed." Id. at ¶ 20. "Thus, a fiduciary relationship cannot be unilateral, but must be mutual." Horak at ¶ 32.
{¶ 28} A fiduciary is " 'a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.' " Haluka v. Baker , 66 Ohio App. 308, 312, 34 N.E.2d 68 (9th Dist.1941). "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." In re Termination of Emp. , 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974). "The burden of proving the existence of a fiduciary relationship is on the party asserting it." RPM, Inc. at ¶ 20. However, "a mere friendship in which a person renders gratuitous assistance to a friend does not give rise to a confidential or fiduciary relationship." In re Estate of Hill , 4th Dist. Scioto No. 99CA2663, 2000 WL 326134, *3 (Mar. 15, 2000). "Despite the apparently broad definition of the term 'fiduciary' in Ohio, a review of the case law reveals that courts have been reluctant to characterize relationships between individuals as being fiduciary in nature, with the obvious exception of those relationships that involve statutorily-imposed duties." Casey v. Reidy , 180 Ohio App.3d 615, 2009-Ohio-415, 906 N.E.2d 1139, ¶ 35 (7th Dist.). Courts have required complete dependence by the inferior party in order to recognize the de facto status. Id. at ¶ 36. The Tenth District Court of Appeals aptly cautioned:
"It is an unavoidable truth of human conduct that people habitually relate their social relations with their business dealings. To automatically place the parties to such a transaction into a fiduciary relationship with each other would open an enormous number of business dealings and transactions, perhaps a preponderance of them, to review by the courts on this basis. This simply ought not be the rule for the application of the principle of 'special trust or confidence' embodied in the fiduciary concept * * *."
Snyder v. Webb , 10th Dist. Franklin No. 97APE09-1248, 1998 WL 318815, *5 (June 18, 1998).
{¶ 29} Dr. Toth contends that she agreed to allow Ms. Slyman to take Laci to Marietta for training upon Ms. Slyman's assurance that Laci "would be safe and he would be well taken care of and brought back fine and as good as he was when he left." She further contends that this interaction established the existence of a fiduciary duty, and that Ms. Slyman's failure to return Laci constituted a breach of that duty.
{¶ 30} In the present case, construing the evidence most strongly in favor of Dr. Toth, the mere assurance that Laci would be taken care of and returned in good condition created no special trust or confidence and no resulting position of superiority *1217 or influence acquired by virtue of a special trust. There is no evidence of a fiduciary relationship between Dr. Toth and Ms. Slyman. We therefore conclude that the trial court did not err in directing a verdict against Dr. Toth on her claim for breach of fiduciary duty.
Loss of Consortium
{¶ 31} Dr. Toth also argues that a directed verdict should not have been granted against her on the claim for loss of consortium. We disagree.
{¶ 32} There is no claim for loss of consortium of animals, i.e., the loss of companionship of animals, recognized by Ohio law. See Oberschlake v. Veterinary Assoc. Animal Hosp. , 151 Ohio App.3d 741, 2003-Ohio-917, 785 N.E.2d 811, ¶ 20 (2d Dist.). Dr. Toth provides us with no legal precedent that would suggest otherwise. We therefore conclude the trial court did not err in directing a verdict against Dr. Toth on her claim for loss of consortium.
{¶ 33} Dr. Toth's second assignment of error is sustained as to her claims for fraud and unjust enrichment, and overruled as to her claims for breach of fiduciary duty and loss of consortium.
ASSIGNMENT OF ERROR THREE
THE TRIAL COURT ERRED BY FAILING TO PROPERLY INSTRUCT THE JURY ON THE PARTIES' RESPECTIVE CLAIMS RESULTING IN A VERDICT THAT WAS CONTRARY TO LAW.
{¶ 34} In her third assignment of error, Dr. Toth argues the trial court erred by failing to properly instruct the jury. We disagree. Within this third assignment of error, Dr. Toth raises three separate arguments for consideration.
{¶ 35} A trial court is to provide jury instructions warranted by the evidence presented in a case that correctly and completely state the law. Wiegland v. Fabrizi Trucking & Paving Co. , 2017-Ohio-363, 83 N.E.3d 247, ¶ 45. "An appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." State v. Adams , 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
{¶ 36} Dr. Toth first argues the trial court abused its discretion in refusing to instruct the jury on bailment and the impact of a bailment relationship on Ms. Slyman's claim for unjust enrichment. Civ.R. 51(A) provides: "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Although Dr. Toth proposed a lengthy addition to the trial court's jury instruction on Ms. Slyman's claim for unjust enrichment, an instruction on bailment and the impact of a bailment relationship were not a part of the requested instructions. In the absence of such a request, there was, consequently, no such refusal by the trial court. Because there was no basis for an objection, and because no such objection was made, this argument lacks merit.
{¶ 37} Dr. Toth did, however, request an instruction on bailment during the discussion with the trial court regarding jury instructions for Dr. Toth's claims. Because the trial court granted Ms. Slyman a directed verdict on Dr. Toth's bailment claim, a bailment instruction was not required. If, however, assuming arguendo that the request had been made at the proper time, Dr. Toth has failed to provide any case law to support the notion that an *1218 instruction on bailment would have been a proper addition to the trial court's instruction on Ms. Slyman's claim for unjust enrichment. Furthermore, although the proposed jury instructions she filed with the trial court contained bailment language as to her claims for bailment and for declaratory judgment, Dr. Toth failed to provide any language for the trial court to consider with regard to the claim for unjust enrichment. We therefore conclude the trial court did not abuse its discretion in failing to instruct the jury on the issue of bailment.
{¶ 38} Dr. Toth next argues the trial court erred by instructing the jury that any damages for Dr. Toth's claim for conversion were subject to setoff and capped at the market value of the horse. Dr. Toth did not object to any such instruction at trial, and therefore did not preserve this issue for our review as required by Civ.R. 51(A).
{¶ 39} Dr. Toth also argues the trial court erred by refusing to instruct the jury on malice. On October 29, 2014, the trial court granted Ms. Slyman's motion to bifurcate trial as to Dr. Toth's claim for punitive damages. R.C. 2315.21(B)(1) provides:
In a tort action that is tried to a jury and in which a plaintiff makes a claim for compensatory damages and a claim for punitive or exemplary damages, upon the motion of any party, the trial of the tort action shall be bifurcated as follows:
(a) The initial stage of the trial shall relate only to the presentation of evidence, and a determination by the jury, with respect to whether the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant. During this stage, no party to the tort action shall present, and the court shall not permit a party to present, evidence that relates solely to the issue of whether the plaintiff is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.
(b) If the jury determines in the initial stage of the trial that the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant, evidence may be presented in the second stage of the trial, and a determination by that jury shall be made, with respect to whether the plaintiff additionally is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.
R.C. 2315.21(C) goes on to provide that punitive damages are not recoverable from a defendant in a tort action unless both "[t]he actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud" and "[t]he trier of fact has returned a verdict or has made a determination * * * of the total compensatory damages recoverable by the plaintiff from that defendant."
{¶ 40} In the present case, malice was not an element of Dr. Toth's claim for conversion; rather, it was an element to be proven in order to determine whether Dr. Toth was entitled to recover punitive damages. As such, an instruction on malice was not appropriate during the initial stage of the jury trial. See R.C. 2315.21(B)(1)(a). We therefore conclude the trial court did not abuse its discretion in failing to instruct the jury on the issue of malice.
{¶ 41} Dr. Toth's third assignment of error is overruled.
ASSIGNMENT OF ERROR FOUR
THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE OF SPECIAL DAMAGES.
{¶ 42} In her fourth assignment of error, Dr. Toth argues the trial court *1219 erred by excluding evidence of special damages from the jury's consideration. We disagree.
{¶ 43} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage , 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. A trial court is afforded broad discretion in admitting evidence and we will not reject an exercise of this discretion unless it has clearly been abused and the appealing party has thereby suffered material prejudice. Packard v. Packard , 9th Dist. Summit No. 19870, 2000 WL 1729459, *2 (Nov. 22, 2000) ; accord State v. Long , 53 Ohio St.2d 91, 98, 372 N.E.2d 804 (1978). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. Pons v. Ohio State Med. Bd. , 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).
{¶ 44} Specifically, Dr. Toth argues that the trial court erred in excluding the following evidence: 1.) Exhibit CCCCC, a receipt of sale and bill of sale for a miniature horse alleged to have been purchased for use in her clinical psychology practice; 2.) Exhibits AAAAA-1 through AAAAA-5, printouts from various stables and horse training facilities listing prices charged for horse rentals and leases; and 3.) Exhibits XXXX and XXXX-1, an invoice for a veterinary bill and a copy of a check evidencing payment. With regard to Exhibit CCCCC, the trial court found there was no evidence that the miniature horse was serviceable for any of the purposes for which Laci had been used, or that the horse, being of a different breed and size, was used as a substitute for Laci.
{¶ 45} "[A]n appellant's assignment of error provides this Court with a roadmap to guide our review." Taylor v. Hamlin-Scanlon , 9th Dist. Summit No. 23873, 2008-Ohio-1912, 2008 WL 1808366, ¶ 12. This Court declines to chart its own course when an appellant fails to provide guidance. Young v. Slusser , 9th Dist. Wayne No. 08CA0019, 2008-Ohio-4650, 2008 WL 4194000, ¶ 7. "It is not this Court's duty to create an appellant's argument for him." Thomas v. Bauschlinger , 9th Dist. Summit No. 27240, 2015-Ohio-281, 2015 WL 340963, ¶ 8. It is an appellant's duty to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record; it is not the function of this Court to construct a foundation for his claims. Ohio Edison Co. v. Williams , 9th Dist. Summit No. 23530, 2007-Ohio-5028, 2007 WL 2781249, ¶ 9.
{¶ 46} Dr. Toth provides us with no argument as to how these evidentiary decisions by the trial court were an abuse of its discretion or were materially prejudicial. Without any theory to the contrary before us, we conclude the trial court did not abuse its discretion in excluding the exhibits in question. Dr. Toth's fourth assignment of error is overruled.
ASSIGNMENT OF ERROR FIVE
THE TRIAL COURT ERRED BY NOT DIRECTING A VERDICT AGAINST FRANCES SLYMAN ON HER CLAIM FOR UNJUST ENRICHMENT.
{¶ 47} In her fifth assignment of error, Dr. Toth argues the trial court erred by not directing a verdict against Ms. Slyman on her claim for unjust enrichment when it had found in favor of Dr. Toth on the claim for declaratory relief. In its order granting declaratory relief in favor of Dr. Toth, the trial court found that "the plaintiffs refused *1220 to comply with Delphi Toth's requests to return the horse to her and have wrongfully retained possession of that horse." Dr. Toth suggests that this finding should act as collateral estoppel to preclude relitigation of an issue. We disagree.
{¶ 48} Unjust enrichment occurs under Ohio law "when a party retains money or benefits which in justice and equity belong to another." Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio , 40 Ohio St.3d 109, 111, 532 N.E.2d 124 (1988), quoting Stan-Clean of Lexington, Inc. v. Stanley Steemer Internatl., Inc. , 2 Ohio App.3d 129, 131, 440 N.E.2d 1237 (10th Dist.1981). To prevail on a claim of unjust enrichment, a plaintiff must show: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment * * *." Hambleton v. R.G. Barry Corp. , 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) ; Chef Italiano v. Crucible Dev. Corp. , 9th Dist. Summit No. 22415, 2005-Ohio-4254, 2005 WL 1963027, ¶ 26.
{¶ 49} With regard to the duties of an appellant in bringing an appeal before this Court, we again note: "[A]n appellant's assignment of error provides this Court with a roadmap to guide our review." Taylor v. Hamlin-Scanlon , 9th Dist. Summit No. 23873, 2008-Ohio-1912, 2008 WL 1808366, ¶ 12. This Court declines to chart its own course when an appellant fails to provide guidance. Young v. Slusser , 9th Dist. Wayne No. 08CA0019, 2008-Ohio-4650, 2008 WL 4194000, ¶ 7. "It is not this Court's duty to create an appellant's argument for him." Thomas v. Bauschlinger , 9th Dist. Summit No. 27240, 2015-Ohio-281, 2015 WL 340963, ¶ 8.
{¶ 50} Dr. Toth fails to indicate what issue she contends is precluded under her theory of collateral estoppel. While she maintains that a finding by the trial court that Ms. Slyman wrongfully retained Laci should result in a directed verdict because of issue preclusion, she does not provide this Court with her theory of which issue relevant to a claim of unjust enrichment should be precluded. We therefore cannot determine whether a claim of unjust enrichment should be precluded, either for the entire duration or for some portion of time that Ms. Slyman was in possession of Laci. Dr. Toth's fifth assignment of error is overruled.
III.
{¶ 51} Dr. Toth's first, third, fourth, and fifth assignments of error are overruled. Dr. Toth's second assignment of error is sustained as to her claims for fraud and unjust enrichment, and overruled as to her claims for breach of fiduciary duty and loss of consortium. The judgment of the Medina County Court of Common Pleas is affirmed in part and reversed and remanded in part.
Judgment affirmed in part, and reversed and remanded in part.
HENSAL, P.J., CONCURS.
SCHAFER, J., CONCURS IN PART, DISSENTS IN PART.
{¶ 52} I agree with the majority's determination as to all but the first assignment of error. After a preliminary bench trial on the parties' claims for declaratory relief, the trial court found that Ms. Slyman and M.S. wrongfully retained possession of Laci. The trial court afforded Dr. Toth the opportunity to elect her remedy and ordered that the horse be returned to Dr. Toth in lieu of her seeking damages for permanent conversion of the horse. The trial court set the remaining claims for a jury trial, bifurcating claims for punitive damages and attorney fees. Dr. Toth filed a motion seeking to submit evidence of attorney fees she incurred procuring the return of the horse, which she argued were recoverable as compensatory damages in *1221 the conversion claim. The trial court denied Dr. Toth's motion and did not permit her to present such evidence to the jury during the initial phase of the trial.
{¶ 53} The general rule for the measure of damages in a conversion claim is the value of the property at the time of the conversion. Schaffer v. First Merit Bank, N.A. , 186 Ohio App.3d 173, 2009-Ohio-6146, 927 N.E.2d 15, ¶ 28 (9th Dist.) ; Erie R. Co. v. Steinberg , 94 Ohio St. 189, 113 N.E. 814 (1916), paragraph two of the syllabus. It is also a rule in tort actions that the appropriate measure of damages is that which will compensate to make the injured party whole, and "[t]here is no inflexible rule as to the measure of damages for a wrongful conversion." Schaffer at ¶ 29, quoting Digital & Analog Design Corp. v. N. Supply Co. , 9th Dist. Lorain No. 4213, 1987 WL 25779 (Nov. 25, 1987), Fulks v. Fulks , 95 Ohio App. 515, 520, 121 N.E.2d 180 (4th Dist.1953). This Court has deviated from strict adherence to the bright-line rule limiting damages to the value of the property at the time of conversion, and " 'compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered.' " (Internal quotation omitted) Schaffer at ¶ 29, quoting Fulks at 519, 121 N.E.2d 180.
{¶ 54} Dr. Toth sought and obtained a declaratory judgment permitting her repossession of Laci. This recovery of the horse was separate and distinct from her pursuit of compensatory or punitive damages on the conversion claim. By excluding evidence of attorney fees incurred to recover the horse, the trial court improperly restricted Dr. Toth's claim for damages arising out of the wrongful conversion. I would hold that it was error for the trial court to prevent Dr. Toth from presenting evidence of attorney fees incurred to secure Laci's return in the compensatory damage phase of the bifurcated jury trial. I, therefore, concur as to the second, third, fourth, and fifth assignments of error and respectfully dissent as to the first assignment of error.