Harsha, J.
{¶ 1} The trial court granted summary judgment to the petitioners on their claim for the partition of property they owned jointly with Lawrence and Mark Rothwell. Appellant Mark Rothwell asserts that the trial court erred because his evidence established a genuine issue of material fact concerning the existence of an implied oral agreement between the parties not to partition the property. However, Mark Rothwell's evidence did not raise a genuine issue of fact, and even if it did, an oral *838 contract is unenforceable under the statute of frauds. We reject his assertion.
{¶ 2} He also contends that the trial court erred in finding that his claims were barred by the statute of limitations. However, even if the statute of limitations did not apply, his claims were still meritless. First, there was no evidence of an implied-in-fact agreement not to partition the property. Second, there is no viable claim of fraud. And third, the statute of frauds barred his claims, which were premised on a purported oral agreement.
{¶ 3} We affirm the summary judgment of the trial court granting the partition.
I. FACTS
{¶ 4} Jack, Samuel, and Lawrence Rothwell are brothers; Mark Rothwell is Lawrence's son. In August 1995, they obtained ownership of two parcels of property in Vinton County. The deed conveyed a joint life estate to the Rothwells with remainder in fee simple going to the ultimate survivor.
{¶ 5} Nearly eleven years later in June 2016, Jack and Samuel Rothwell filed a complaint in the Vinton County Court of Common Pleas for the partition of the real property, naming Lawrence, Mark, and the Vinton County Treasurer as defendants. Mark filed an answer and counterclaim, which alleged that when the Rothwells purchased the property in 1995, Jack and Samuel approached him about investing in the real estate upon the promise that title would be vested jointly with the right of survivorship among the parties. And because Mark was significantly younger than the other parties, he would end up owning the entire interest in the property. Mark claimed that these representations were false and that he had relied upon them.
{¶ 6} Lawrence did not respond to his brothers' complaint for partition. Jack and Samuel filed a reply to Mark's counterclaim.
{¶ 7} Jack and Samuel filed a motion for summary judgment against Mark and for default judgment against Lawrence. They supported their motion with affidavits which stated: (1) Jack, Samuel, Lawrence, and Mark each have an undivided one-fourth interest as survivorship tenants in the real property; (2) neither Jack nor Samuel told Mark that he would eventually own the entire interest in the real property; and (3) neither Jack nor Samuel entered into any written agreement with Mark stating that he would eventually own the entire interest in the real property.
{¶ 8} Mark filed a memorandum in opposition, which primarily argued that Jack and Samuel fraudulently misrepresented that he would eventually own the real property. Mark submitted the affidavits of himself, his father, Lawrence, and his brother, Derek.
{¶ 9} Mark and Lawrence stated in their affidavits that: (1) they were approached by Jack and Samuel to purchase the real estate; (2) the purchase price of the real estate was $20,000 and they each paid $5,000; (3) it was explained that the property would be held in survivorship form, the last person surviving would own the property free from any other person, and the last person "would most likely be" Mark because "he was the youngest of the four owners"; and (4) had they known that one of the owners could force a sale of the property, they never would have invested in it.
{¶ 10} Derek stated in his affidavit that: (1) he had been asked to join as a partner in the potential purchase of the property after being told about the "last man standing," but he declined because he did not have the money; (2) over the years it was *839 explained that the property was to be held in survivorship form, with the last person surviving owning the property free of any other person, and that the last person surviving would most likely be his brother, Mark, because he was the youngest of the four owners; and (3) he had provided material and labor to improve the real property.
{¶ 11} The trial court's decision found that because there was no written agreement supporting Mark's claim, it was barred by the statute of frauds. The court granted Jack and Samuel's motion for summary judgment and default judgment, also found that Mark's claims were barred by the applicable statutes of limitation, and determined that Jack and Samuel were entitled to partition the real property. It ordered Jack and Samuel's counsel to prepare and circulate a judgment entry.
{¶ 12} During the pendency of the case, Lawrence died, making Jack, Samuel, and Mark sole owners of the real property. The trial court entered judgment issuing a writ of partition for the property and this appeal ensued.
II. ASSIGNMENTS OF ERROR
{¶ 13} Mark assigns the following errors for our review:
1. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE PLAINTIFFS-APPELLEES WERE ENTITLED TO PARTITION THE REAL PROPERTY.
2. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFFS-APPELLEES WERE ENTITLED TO SUMMARY JUDGMENT.
3. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT MARK ROTHWELL'S CLAIMS WERE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.
III. STANDARD OF REVIEW
{¶ 14} Mark contests the trial court's granting of Jack and Samuel's motion for summary judgment on their partition claim. Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. Vacha v. N. Ridgeville , 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56 ; New Destiny Treatment Ctr., Inc. v. Wheeler , 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24 ; Chase Home Finance, LLC v. Dunlap , 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, 2014 WL 3940314, ¶ 26.
{¶ 15} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims and that the movant is entitled to judgment as a matter of law. Dresher v. Burt , 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996) ; Chase Home Finance at ¶ 27. Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial, or that the moving party is not entitled to judgment as a matter of law. See Dresher at 293, 662 N.E.2d 264.
IV. LAW AND ANALYSIS
A. Implied Agreement Not to Sell Real Property
{¶ 16} In his first and second assignments of error Mark asserts that the *840 trial court erred because he established a genuine issue of material fact concerning the existence of an oral agreement between the parties not to partition the property. "Tenants in common, survivorship tenants, and coparceners, of any estate in lands, tenements, or hereditaments within the state, may be compelled to make or suffer partition thereof as provided in sections 5307.01 to 5307.25 of the Revised Code." R.C. 5307.01. "If the court of common pleas finds that the plaintiff in an action for partition has a legal right to any part of the estate, it shall order partition of the estate in favor of the plaintiff or all interested parties, appoint one suitable disinterested person to be the commissioner to make the partition, and issue a writ of partition." R.C. 5307.04. Although the right to partition is governed by statute, it remains an essentially equitable remedy committed to the discretion of the trial court. See, e.g., Reel v. Reel , 2016-Ohio-8116, 74 N.E.3d 995, ¶ 34 (11th Dist.).
{¶ 17} "Courts recognize three types of contracts: express, implied in fact, and implied in law." Martin v. Jones , 2015-Ohio-3168, 41 N.E.3d 123, ¶ 38 (4th Dist.), citing Legros v. Tarr , 44 Ohio St.3d 1, 6, 540 N.E.2d 257 (1989). Mark does not claim that there was an express contract between the parties or one implied in law. He instead argues that the summary judgment evidence raised a genuine issue of material fact about the parties' oral implied-in-fact agreement not to partition the property.[1] A contract implied in fact is " 'a contract that the parties presumably intended, either by tacit understanding or by the assumption that it existed.' " State ex rel. R.T.G., Inc. v. State , 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 31, quoting Black's Law Dictionary 322 (7th Ed. 1999).
{¶ 18} To establish an implied-in-fact contract the proponent must prove there is an agreement, based on a meeting of the minds of the parties and on mutual assent. See Chiquita Brands Internatl., Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA , 2015-Ohio-5477, 57 N.E.3d 97, ¶ 7, quoting Lucas v. Costantini , 13 Ohio App.3d 367, 368, 469 N.E.2d 927 (12th Dist.1983). But unlike an express contract, an implied contract is not created or evidenced by an explicit agreement of the parties, i.e. by a formal offer and acceptance. Rather an implied contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear the parties intended to enter into a contractual relationship despite the lack of a formal agreement. See Union Savings Bank v. Lawyers Title Insurance Corp. , 191 Ohio App.3d 540, 2010-Ohio-6396, 946 N.E.2d 835 ¶ 21 (10th Dist.). "In a contract implied in fact, the meeting of the minds is shown by the surrounding circumstances that demonstrate that a contract exists as a matter of tacit understanding." Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio , 174 Ohio App.3d 29, 2007-Ohio-5562, 880 N.E.2d 926, ¶ 26 (4th Dist.).
{¶ 19} In supporting their motion Jack and Sam Rothwell submitted affidavits expressly stating that they did not tell Mark that he would end up eventually owning the entire interest in the property, and they did not enter into a written agreement to that effect. In opposing the motion Mark submitted his affidavit as well as the affidavits of his father, Lawrence, and his brother, Derek, stating that it was explained *841 to them that they would obtain the property with the right to survivorship: the last person surviving would own the property free of any other person and that the last person "would most likely" be Mark because he was the youngest of the four Rothwells purchasing the property.
{¶ 20} This evidence is insufficient to establish a genuine issue about the existence of an implied-in-fact oral agreement not to partition the property. Jack and Sam expressly stated by affidavit that they did not tell Mark that he would eventually own the property. And Mark submitted affidavits stating only that it was explained that he "would most likely" eventually obtain the property. There is no evidence that Jack and Sam either promised or guaranteed Mark that he would succeed to own the entire property. In fact, the affidavits that Mark submitted only said that "it was explained" that the property would be held in survivorship form and that the last person surviving would own the property free of any other person. And there is no evidence that Jack and Sam either promised or guaranteed not to seek partition of the property.
{¶ 21} The primary case Mark cites in support of his claim in his first and second assignments of error is Murdock v. Murchison , 6th Dist. Lucas No. L-80-166, 1981 WL 5550 (Apr. 17, 1981). In Murdock, a church entered into a lease for property with an option to purchase and the congregation decided to purchase it. The church's attempt to get a loan for the purchase price failed, but two congregants were asked to sign on the loan with the pastor and his wife. The security for the loan was the church property and a parcel owned by the pastor; the monthly mortgage was paid by church members. A few years later, the two congregants, who had co-signed the loan and who owned one-half of the church property, left the church. They sought and received a partition of the property.
{¶ 22} The court of appeals in Murdock at *6, reversed the partition order. Because the property was used entirely for church purposes, it found that partition would breach an implied agreement not to partition the property and the fiduciary relationship between the congregants and the church:
In this particular case, all evidence points to a presumption that the property was to be used for church purposes. Only after the appellant had failed in his own attempts to purchase the property did he turn to appellee to aid in the financing. The property was used entirely for church purposes. Based upon the record and the evidence presented, an agreement to hold the property for the religious organization and to avoid partition seems evident.
* * *
Furthermore, * * * a fiduciary relationship may also be seen to exist when one undertakes a duty to act primarily for the benefit of another. * * * Appellee, by agreeing to assist, in effect undertook a duty to aid the church and its congregation in the purchase and maintenance of its property. There is also some evidence that appellee undertook the status and duties of a priest or deacon in the congregation, hence was under an obligation of trust and confidence toward his religious following. A fiduciary is under a duty of good faith and loyalty, such good faith being breached by the confiscation of church property through partition.
{¶ 23} Conversely, the parties here did not have any fiduciary relationship. Likewise, there is no evidence of a special purpose intended for use of the real property.
*842 {¶ 24} Moreover, Murdock did not involve an assertion that the statute of frauds barred a purported implied-in-fact oral contract. R.C. 1335.05, Ohio's statute of frauds, provides that "[n]o action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *." Here the trial court held that "[s]ince there is no writing [Mark's] claim is barred," thus crediting Sam and Jack Rothwell's claim that the statute of frauds barred Mark's defense of an implied-in-fact oral contract not to partition.
{¶ 25} On appeal Mark does not explicitly assert that the statute of frauds did not bar his claim. An agreement not to partition land is manifestly an agreement "concerning" the "contract or sale of lands" so it fits within the scope of the statute of frauds. See generally Statute of Frauds-Oral Agreement for Partition of Land-Invalidity of Defense of Oral Agreement Not to Partition in Action Brought for Partition , 22 St. John's L.Rev. 289-291 (1948); Equitable and Contractual Defenses to Partition , 18 Stan.L.Rev. 1428 (1966) ("If the agreement not to partition is oral, it may run into additional difficulty with the Statute of Frauds provisions that require a writing for a contract for the sale of an interest in land").
{¶ 26} Nor does Mark assert, or the evidence establish, the existence of an exception to the statute of frauds, e.g., part performance. See, e.g., Spectrum Benefit Options , 174 Ohio App.3d 29, 2007-Ohio-5562, 880 N.E.2d 926, at ¶ 43-44.
B. Affirmative Defense of Fraud
{¶ 27} At best Mark's fraud claim was premised upon a representation about potential future conduct, but it is well settled that a " 'claim of fraud cannot be predicated upon promises or representations relating to future actions or conduct.' " M.S. by Slyman v. Toth , 2017-Ohio-7791, 97 N.E.3d 1206, ¶ 19 (9th Dist.), quoting Martin v. Ohio State Univ. Found. , 139 Ohio App.3d 89, 98, 742 N.E.2d 1198 (10th Dist.2000).
{¶ 28} Under these circumstances, the trial court did not err by granting Jack and Sam Rothwell's motion for summary judgment and issuing the order of partition. We overrule Mark's first and second assignments of error.
C. Statute of Limitations
{¶ 29} In his third assignment of error Mark argues that the trial court erred in determining that his breach of contract and fraud claims were barred by the statute of limitations.
{¶ 30} Even if we assume that the trial court erred in holding that Mark's claims were barred by the applicable statutes of limitations, any error could only be harmless because Mark's claims were meritless for alternative reasons, i.e., no evidence of implied-in-fact agreement not to partition the property, no viable claim of fraud, and the applicability of the statute of frauds to bar the claims insofar as they were premised on a purported oral agreement. See State v. Marcum , 4th Dist. Hocking No. 14CA13, 2014-Ohio-5373, 2014 WL 6877673, ¶ 27, quoting Stammco, L.L.C. v. United Tel. Co. of Ohio , 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 51 (" 'a reviewing court will not reverse a correct judgment merely because it is based on erroneous reasons' "). We overrule Mark's third assignment of error.
V. CONCLUSION
{¶ 31} The trial court properly entered summary judgment in favor of Jack and Sam Rothwell and ordered a partition of *843 the parties' real property. Having overruled Mark Rothwell's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Hoover, P.J. & Abele, J.: Concur in Judgment and Opinion.

Jack and Sam Rothwell argue that Mark waived his claim that they had an implied-in-fact contract not to partition the property by failing to raise it in the trial court. But Mark did raise this claim in support of his fraud claim in his memorandum in opposition to the summary judgment motion. Thus, we reject the claim of waiver.