[Cite as *Barksdale v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-395.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christopher Barksdale, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-297 |
| v. | : | (Ct. of Cl. No. 2014-00645) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on February 2, 2017

**On brief:** *Swope and Swope - Attorneys at Law*, and *Richard F. Swope*, for appellant. **Argued:** *Richard F. Swope.*

**On brief:** *Michael DeWine*, Attorney General, and *Timothy M. Miller*, for appellee. **Argued:** *Timothy M. Miller.*

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Christopher Barksdale, appeals the March 23, 2016 judgment of the Court of Claims of Ohio which adopted the August 26, 2015 magistrate's decision, after trial, in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction. For the reasons that follow, we affirm.

I. Facts and Procedural History

{¶ 2} On July 16, 2014, appellant refiled a complaint in the Court of Claims. In the complaint, appellant alleged that on or about February 20, 2013, he held a valid bottom bunk restriction and that he was ordered to utilize the top bunk in his cell. That

evening "he suffered from disabilities that caused him to have a difficult time getting in and out of the top bunk, causing him to fall with great force when he tried to alight injuring his back, neck, head and body." (Complaint at ¶ 3.) Appellant alleged further that appellee was negligent in refusing to honor his bottom bunk restriction, and that as a result of this negligence appellant received the injuries to his back, neck, and body.

{¶ 3} Appellee filed an answer on August 7, 2014 and asserted, among others, the following defenses:

> Fourth Defense: The negligent and/or intentional acts of the [Appellant], or one or more persons for whose conduct [Appellee] is not liable, were the intervening, superseding, and active proximate causes of the injuries and damages alleged in the Complaint.
>
> Fifth Defense: [Appellant's] own negligence was the sole proximate or a major contributing cause of the injuries/damages described in the Complaint.
>
> Sixth Defense: [Appellant's] own negligence is greater than any negligence by [Appellee], which is specifically denied, and [Appellant] is therefore barred from recovery.

(Answer at 2.)

{¶ 4} On March 5, 2015, a magistrate of the Court of Claims conducted a trial on the issue of liability. According to the magistrate's decision, appellant testified that prior to entering into appellee's custody, he had a pre-existing history of seizures, as well as back problems, a bad knee, a bullet wound in his shoulder, and blurred vision due to blood pressure problems. At some point, appellant was transferred to a new dormitory at the Franklin Medical Center, at which time, although he had a valid[1] lower bunk restriction, he was told that he would be placed in the upper bunk because the lower bunks were needed for elderly prisoners and also because his term would be expiring soon. Five days prior to his expected release, appellant was sharing a cell with inmates Russell Pierce, Roy J. Sage, and Dennis White, Sr. On the night of the incident, appellant needed to use the lavatory during the night and attempted to descend a ladder attached to his bunk. At the bottom of the ladder was a chair which appellant used to help him when

---

[1] Whether appellant's lower bunk restriction was valid on the date he fell is somewhat disputed; however, in adopting the magistrate's decision, the Court of Claims assumed the restriction was valid. We will assume also, without deciding, the restriction was valid on the date appellant fell.

he was climbing on or off the ladder. The magistrate found that appellant descended the ladder and went to step on the chair, his foot missed or slipped off the chair, causing him to fall backward, strike his head on a metal locker box, and sustain injury.

{¶ 5} At the infirmary, appellant was examined by Barbara Vermilyea, R.N. Nurse Vermilyea told appellant she could have him moved to a lower bunk; however, appellant declined Nurse Vermilyea's offer to move him to a lower bunk.

{¶ 6} Dr. Sheryl Stephens testified that she issued the lower bunk restriction on January 12, 2012 after seeing documentation of appellant having a seizure diagnosis. The specific order read: "BB/BR x 1 [year] re seizure disorder." (Appellant's Ex. 4.) She did not examine appellant at that time, and several weeks later she was transferred to another facility. Dr. Stephens testified that she ordered the lower bunk restriction pursuant to Protocol No. B-19, "Guidelines for Determination of Medical Restrictions." Protocol No. B-19 listed several bases for qualifying for lower bunk restrictions; however, Dr. Stephens testified that appellant's diagnosed seizure disorder was the "only reason" she issued the lower bunk restriction. (Magistrate's Dec. at 7.) According to the magistrate, Dr. Stephens further testified that, in her professional opinion, her review of appellant's medical file at the time of trial did not demonstrate that appellant was unable to safely get in and out of an upper bunk at the time of the incident.

{¶ 7} After trial, the magistrate issued a decision finding that the harm suffered by appellant was proximately caused by his own negligence in failing to exercise proper care when climbing down from the upper bunk. Specifically, the magistrate found:

> [Appellant] stepped down from the ladder without ensuring that he had adequate footing beneath him, and by not taking care to see to it that his foot was firmly on the chair or another supporting surface before he descended any farther, [appellant] failed to exercise reasonable care for his own safety. While [appellant] did describe having knee and back problems which caused him some difficulty at times with ambulating or climbing in and out of his bunk, [appellant] did not present credible evidence to establish a causal relationship between his failure at the time of the incident to safely alight from the bed and any of the medical issues that he contends made it necessary for [appellee] to place him in a lower bunk. Rather, what the evidence shows is that [appellant] was not careful enough and made a misstep as he descended the ladder.

> With respect to the alleged negligence on the part of [appellee], the magistrate finds that even if [appellee] owed a duty to place [appellant] in a lower bunk, the risk attending that duty was the risk that [appellant] might suffer a seizure and fall out of bed. As previously stated, however, [appellant's] fall was not caused by a seizure, but by his own negligence. Therefore, whether or not [appellee] breached its duty of care by not placing [appellant] in a lower bunk to mitigate the risk of his being harmed by a seizure, any such breach was not the proximate cause of [appellant's] injury.
>
> Furthermore, while it was suggested at trial that various medical conditions such as back or knee pain, arthritis, or high blood pressure were all additional reasons why [appellee] had a duty to place [appellant] in a lower bunk, the magistrate finds that the evidence does not support the conclusion that such factors made it unreasonably dangerous for [appellant] to climb in and out of an upper bunk at the time of the accident. * * * And, again, even if [appellant] had proven otherwise, the evidence shows that it was [appellant's] own negligence rather than any medical issue that proximately caused the fall.

(Magistrate's Dec. at 11-12.)

{¶ 8} Appellant filed objections to the magistrate's decision and was granted leave to submit videotaped testimony in the form of DVDs from the magistrate's trial to the court in lieu of a transcript. Appellee filed a response on January 22, 2016.

{¶ 9} On March 23, 2016, the Court of Claims filed a judgment entry overruling appellant's objections and adopting the magistrate's decision, including the magistrate's findings of fact and conclusions of law. Further, the court discussed whether appellee's alleged negligence was the proximate cause of appellant's injuries. The court observed Dr. Stephen's testimony that she issued the restriction because of appellant's well-documented seizure disorder:

> It follows that the harm she anticipated when she issued the restriction was a fall caused by that disorder. It is undisputed that [appellant] did not suffer from a seizure when he fell from the bunk. The proximate cause of the fall was [appellant's] own negligence in failing to use appropriate care while getting out of the bunk. [Appellee], who is not an insurer of inmate safety, only owed [appellant] the duty of ordinary care with regard to the foreseeable risk of a fall

caused by [appellant's] seizure disorder. * * * Regardless of [appellee's] administrative error of failing to issue him a lower bunk restriction after January 12, 2013, [appellant] failed to meet his burden of proof because the proximate cause of the fall was his own negligence in failing to take care while stepping down from the top bunk.

Lastly, in both his objections and during trial, [appellant] states that he suffered from a host of other ailments, including back or knee pain, arthritis, and high blood pressure, and these medical concerns affected his entire physical condition, and, as such, he should have been placed in a lower bunk. Dr. Stephens testified that none of those conditions warranted a lower bunk restriction. Only [appellant's] prior documented seizure disorder warranted the restriction. [Appellant] also did not plead a medical claim, and as such, his opinions about his other medical concerns were not corroborated by an independent medical expert.

(Jgmt. Entry at 5-6.)

## II. Assignments of Error

{¶ 10} Appellant appeals and assigns the following five assignments of error for our review:

[I.] THE MAGISTRATE AND THE TRIAL COURT ERRED IN FINDING THE NEGLIGENCE OF PLAINTIFF-APPELLANT WAS THE CAUSE OF HIS FALL.

[II.] THE MAGISTRATE AND THE TRIAL COURT IMPROPERLY CONSTRUED, APPLIED AND IGNORED PROTOCOL B-19, PLAINTIFF'S EXHIBIT 15, IN HIS DECISION, PLACING THE BLAME ON PLAINTIFF-APPELLANT, WHICH RIGHTLY BELONGED TO DEFENDANT-APPELLEE.

[III.] THE MAGISTRATE AND TRIAL COURT IGNORED THE CRUCIAL FACT THAT DR. STEPHENS' ORDER MAKING THE BOTTOM BUNK RESTRICTION EFFECTIVE FROM JANUARY 12, 2013 TO JANUARY 12, 2014 WAS IN PLAINTIFF-APPELLANT'S MEDICAL RECORD AND CIRCULATED, AND IN EFFECT ELIMINATING PLAINTIFF-APPELLANT'S NEED TO SEEK A RESTRICTION.

[IV.] THE MAGISTRATE AND TRIAL COURT ERRED BECAUSE THEY FAILED TO CONSIDER THE TIME OF THE FALL, PLAINTIFF-APPELLANT'S ENTIRE PHYSICAL CONDITION AND THE METHOD INMATES WERE REQUIRED TO USE IN CLIMBING UP AND DOWN FROM A TOP BUNK.

[V.] THE DECISIONS OF THE MAGISTRATE AND TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

We address appellant's assignments of error together because they are interrelated and address the magistrate's, and consequently the Court of Claims', findings of fact. Appellant's assignments of error mirror his objections to the magistrate's decision, asserting the Court of Claims erred in adopting the magistrate's decision.

## III. Discussion

{¶ 11}   In accordance with Civ.R. 53, the trial court reviews a magistrate's decision de novo. *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15, citing *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, ¶ 10 (2d Dist.).   In ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  An appellate court, by contrast, applies an abuse of discretion standard when reviewing a trial court's adoption of a magistrate's decision. *Id.*, citing *State Farm* at ¶ 11.  An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Claims of error by the trial court must be based on the trial court's actions, rather than on the magistrate's findings.  *Mayle* at ¶ 15.  Thus, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily or unconscionably.  *Id.*, citing *State Farm* at ¶ 11.

{¶ 12} To maintain his ordinary negligence claim, appellant must show: (1) the existence of a duty owed to him by the defendant, (2) a breach of that duty, and (3) injury proximately resulting from that breach.  *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981).  "In the context of a custodial relationship between the state and its prisoners, the

state owes a common-law duty of reasonable care and protection from unreasonable risks." *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 745 (10th Dist.1998), citing *McCoy v. Engle*, 42 Ohio App.3d 204, 207 (10th Dist.1987). The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk. *Id.*, citing *McAfee v. Overberg*, 51 Ohio Misc. 86 (Ct. of Cl.1977). Because the state's compliance with its duty of care owed to prisoners will turn on the foreseeability of the eventual injuries, breach must be assessed in light of the individual factual circumstances. *Jeffers v. Olexo*, 43 Ohio St.3d 140 (1989); *Clemets v. Heston*, 20 Ohio App.3d 132 (6th Dist.1985). " 'Reasonable or ordinary care is that degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances.' " *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-442, 2013-Ohio-1519, ¶ 17, quoting *Woods* at 745, citing *Smith v. United Properties, Inc.*, 2 Ohio St.2d 310 (1965). Furthermore, " '[p]roximate causation' is described as 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.' " *Marsh v. Heartland Behavioral Health Ctr.*, 10th Dist. No. 09AP-630, 2010-Ohio-1380, ¶ 40-42, quoting Prosser, *Law of Torts*, Section 41, at 263 (5th Ed.1984). Appellant does not assign error to the law of negligence which the Court of Claims applied. The resolution of his assignments of error, however, turn on the Court of Claims' findings of fact regarding proximate cause.

{¶ 13} Included in the corrected record of this case is a miscellaneous exhibit: one DVD. The DVD contains a video/audio recording of the trial held before the magistrate in the Court of Claims. The record does not include a transcript.

{¶ 14} App.R. 9(B) states in part:

> (1) [I]t is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed in a form that meets the specifications of App.R. 9(B)(6).
>
> * * *
>
> (4) If the appellant intends to present an assignment of error on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of

proceedings that includes all evidence relevant to the findings or conclusion.

* * *

(6)(d) The transcript of proceedings shall be prepared on white paper eight and one-half inches by eleven inches in size with the lines of each page numbered and the pages sequentially numbered[.]

{¶ 15} The Court of Claims permitted appellant to submit the video/audio recording in lieu of a transcript upon submission of his objections to the magistrate's decision. Such alternative to a transcript is not permitted, however, before an appellate court. The Staff Notes to App.R. 9 addressing amendments made in 2011 observe:

The amendments to App.R. 9 are designed to strike a balance between the trial court's autonomy in determining how to record proceedings in the trial court and the appellate court's preference for official transcripts in lieu of video recordings transcribed by counsel or counsel's assistants. Under App.R. 9(A), trial courts may choose to record proceedings through the use of a stenographic/shorthand reporter, an audio-recording device, and/or a video-recording device, except in capital cases, in which a stenographic/shorthand reporter is required. Regardless of the method of recording the proceedings, a transcript is required for the record on appeal; a videotaped recording of the trial court proceedings is no longer adequate. For parties who cannot afford to have a transcript prepared, existing case law already authorizes the use of a statement of proceedings under App.R. 9(C).

{¶ 16} App.R. 9(C) permits a filing of a statement of the evidence in lieu of a transcript when: (1) no recording was made, (2) when the transcript of the proceedings is unavailable, or (3) when a recording was made but is no longer available for transcription. The appellate docket reveals that on April 14, 2016, appellant filed an affidavit of indigency and request to proceed in forma pauperis. However, appellant has not presented this court with a statement which meets the requirements set forth in App.R. 9(C), nor has appellant presented an agreed statement pursuant to App.R. 9(D).

{¶ 17} This court has held that where there is no transcript submitted on appeal, "[t]here is a presumption that the trial court proceedings were validly conducted. Absent a complete transcript or an acceptable alternative (such as is described in App.R. 9(C)),

we must presume that the trial court's decision is correct." *Jenkins v. State Farm Mut. Auto. Ins. Co.*, 10th Dist. No. 11AP-1074, 2013-Ohio-1142, ¶ 30. Furthermore, where an appellant fails to provide the court with a transcript of the trial court proceedings, despite the fact that he contends that certain of the trial court's finding of fact were improper, a court has nothing to review without a transcript and must presume that the findings of fact are correct and supported by the evidence. *Am. Fam. Ins. Co. v. Hoop*, 4th Dist. No. 13CA983, 2014-Ohio-3773, ¶ 36-37.

{¶ 18} In support of his assignments of error, appellant has referred this court to portions of the video/audio recording from the trial as well as to numerous exhibits which are included in the record of the case, including exhibit 15, Guidelines for Determination of Medical Restrictions, Protocol No. B-19. Appellant also argues that failure to abide by a valid medical restriction was negligent because appellant would not have fallen had appellee abided by the order. Nevertheless, without a transcript, this court is bound by the Court of Claims' finding that "[appellant] failed to meet his burden of proof because the proximate cause of the fall was his own negligence in failing to take care while stepping down from the top bunk." (Jgmt. Entry at 5.) We are also bound by the court's determination to accept Dr. Stephen's testimony that "none of [appellant's other] conditions warranted a lower bunk restriction."[2] (Jgmt. Entry at 5-6.) Accordingly, we cannot say the Court of Claims abused its discretion in adopting the magistrate's decision. Appellant's five assignments of error are overruled.

## IV. Conclusion

{¶ 19} Finding that the Court of Claims did not abuse its discretion in adopting the magistrate's decision, we overrule appellant's five assignments of error and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

TYACK, P.J., and BROWN, J., concur.

_____

[2] Appellant argues that the Court of Claims' finding that his own negligence caused his fall was in error and not supported by the manifest weight of the evidence. Appellant asserts: (1) that the magistrate and the Court of Claims ignored the late hour and the poor lighting at the time of his fall, (2) that his age and chronic medical problems made it evident that it was inevitable he would fall when trying to maneuver to and from the top bunk, (3) that he told a corrections officer and Ms. Johnston that he had a lower bunk restriction, and (4) that the fall was caused by appellant being required to climb up and down from a top bunk. Without a transcript of the proceedings, we cannot consider these factual arguments.