[Cite as *Pryor v. Pryor*, 2025-Ohio-1854.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Anthony Pryor, | : | Case No. 24CA10 |
| Plaintiff-Appellant, | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| v. | : | |
| Nyowka Pryor, | : | **RELEASED 5/19/2025** |
| Defendant-Appellee. | : | |

_____
<u>APPEARANCES</u>:

Anthony Pryor, Caldwell, Ohio, pro se appellant.

Jason G. Heinrich, Legal Aid of Southeast and Central Ohio, Athens, Ohio, for appellee.[1]
_____
Hess, J.

{¶1}  Anthony Pryor appeals from a decision of the Washington County Common Pleas Court partitioning real property.  He presents three assignments of error asserting that (1) the trial court lacked jurisdiction and issued a judgment barred by res judicata, (2) the trial court's decision violates his due process rights and is void for lack of notice, and (3) the trial court's decision violates his due process rights and is based on errors of law and fact.  For the reasons which follow, we affirm the trial court's judgment.

---

[1] Appellee, Nyowka Pryor, did not file an appellee's brief.  Ms. Pryor's counsel filed a notice of suggestion of death indicating Ms. Pryor died during the pendency of this appeal.  App.R. 29(A) states: "If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in the court of appeals, the personal representative of the deceased party may be substituted as a party on motion filed by the representative, or by any party, with the clerk of the court of appeals."  App.R. 29(A) further states:  "If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the court of appeals may direct."  No motion for substitution has been filed, and we direct that this appeal proceed and be determined as if Ms. Pryor was not deceased.  *See In re Guardianship of Beaty*, 2019-Ohio-2116, ¶ 1, fn. 1 (8th Dist.), citing *Keeton v. Telemedia Co. of S. Ohio*, 98 Ohio App.3d 405, 407, fn. 1 (4th Dist. 1994).

## I. FACTS AND PROCEDURAL HISTORY

{¶2}    In February 2023, Mr. Pryor filed a complaint against his sister, Nyowka Pryor, which alleged the following. The parties co-own real property in Washington County, Ohio.  Ms. Pryor resided on the property from at least August 2020 until February 2022 without paying rent. She used her ownership interest as collateral to finance a mortgage.  He offered his GI Home Loan as assistance, but she refused.  In August 2022, he wrote to Ms. Pryor to inquire about the "mortgage, taxes, and the like" and to suggest how they could equally share access to the property, but she did not respond. He gave power of attorney to his son, as agent, to enter the residence in his stead and oversee any remodeling or construction necessary to transform it from a house into two apartments and rent out his apartment.  He told Ms. Pryor about the power of attorney and requested a letter stating she would not impede Mr. Pryor or his son from entering the home, but she did not respond.  Mr. Pryor then gave his son another power of attorney which added permission for him to live at the residence instead of renting it out.

{¶3}    The complaint alleged that Ms. Pryor had had exclusive access to the property since August 2020 and unlawfully denied Mr. Pryor access by refusing to respond to his communications and sending a vulgar communication to his agent.  The complaint alleged that Mr. Pryor had the right to monthly compensation for Ms. Pryor's "unlawful denial and sole use of said residence."  The complaint requested that Ms. Pryor give Mr. Pryor or his agent (1) access to the residence with sole access to the garage, (2) $600 a month "compensation for said usage," or (3) "an option for [Ms. Pryor] to purchase [Mr. Pryor's] 50% ownership for forty-thousand dollars ($40,000.00)."  He requested that

if Ms. Pryor chose the first or second option, a "stipulation of Survivorship be incorporated into this deed so the parties' heirs do not have the same issues in the future."

{¶4}   Ms. Pryor filed a motion to dismiss, which the trial court denied.  Ms. Pryor then filed an answer and a counterclaim alleging the following.  The parties inherited the property after their mother's death. Before the parties came into possession of the property, squatters caused significant damage to it.  Before the parties' mother died, she defaulted on her mortgage.  The bank filed a foreclosure action, which was resolved when Ms. Pryor, as administrator of her mother's estate, entered into a loan modification.  Ms. Pryor had made all payments on the loan from her own funds, and the value of the home did not exceed the loan balance she owed. Ms. Pryor had been solely responsible for payment of real estate taxes and insurance since the administration of her mother's estate and had incurred significant expenses for repairs and improvements to the property.  Mr. Pryor had been incarcerated since before the administration of the estate and would continue to be for the foreseeable future, so he could not contribute financially to the maintenance and expenses of the home. Thus, there was no equity in the home, the "entire burden, financial and otherwise" of rescuing it from foreclosure had fallen on her, she "alone incurred substantial expenses for debt payments, repairs, maintenance, taxes, and insurance," and nothing of value remained to be divided between the parties. She asked the court to enter judgment finding she was entitled to exclusive use and ownership of the property.  Mr. Pryor filed a motion to dismiss the counterclaim, which the trial court denied.  Mr. Pryor then filed an answer to the counterclaim, and Ms. Pryor filed a motion for summary judgment, which the trial court denied.

{¶5}    The trial court conducted a bench trial, and on May 24, 2024, issued a decision finding the parties inherited the property from their deceased mother and each received an undivided 50% ownership interest through a Certificate of Transfer filed in the Washington County Probate Court on January 22, 2021. The court found that Ms. Pryor had been inhabiting the house, and Mr. Pryor had not because he was a convicted rapist currently serving 30 years to life in prison and would not be eligible for parole for 8 years. The court explained that Mr. Pryor was requesting that he or his agent be given access to the house, that he be compensated $600 a month for Ms. Pryor exclusively using the property, or that Ms. Pryor buy his ownership interest for $40,000. The court noted the complaint was "unartfully drafted," and the court considered it as one for partition.  The court also explained that Ms. Pryor argued that she should be awarded the property outright and that Mr. Pryor's share should be extinguished.

{¶6}    The court found the parties' mother spent time in a nursing home before her death, and due to Medicaid paying for her medical care, there was a Medicaid Estate Recovery lien on the property for $79,755.58. Around the time of her death, squatters were trashing the home.  And after her death, the property went into foreclosure because she had not been paying the mortgage. On August 9, 2022, Ms. Pryor assumed the mortgage, bringing the home out of foreclosure. The mortgage had a current principal balance of about $67,684.11 and was only in her name.  Ms. Pryor evicted the squatters and had been living on the property, trying to make it habitable after the destruction they caused.  She was considered disabled under the Social Security Act, and as her mother's disabled child, pursuant to statute, the Attorney General could not foreclose on the Medicaid lien so long as Ms. Pryor resided on the property.

{¶7}   The court found there was a lot of animosity between the parties, that they did not get along, and that it would be impossible for them to live together on the property, assuming Mr. Pryor ever got out of prison. The court also found Ms. Pryor did not get along with Mr. Pryor's son, and he could not live in the home as Mr. Pryor's agent. The court noted that Mr. Pryor's son had served a four-year prison term for felonious assault and endangering children and was still on postrelease control.

{¶8}   The court found Ms. Pryor obtained a comparative market analysis for the property valuing it at $10,000 based on the demolition of the home and value of the resulting empty lot. Mr. Pryor submitted the county auditor's $83,930 valuation and an Inventory and Appraisal from the probate case which listed the value at $76,660, which was obtained from the auditor's website. The court found it was "impossible to determine the actual value of property without a sale." However, the court found "the value is much closer to the $10,000 comparative market analysis" because it "included a viewing of the interior condition of the home." The court found the auditor did not go in the home, so the auditor's valuation did not consider the destruction by the squatters. The court found the home "is in very poor condition."

{¶9}   The court found that if it ordered the sale of the property "to obtain the true market value," there would be nothing to divide between the parties as the Medicaid lien and mortgage were much greater than any estimated values of the property. The court found that Ms. Pryor wanted to retain the property as it gave her somewhere to live, and she could afford the mortgage, for which she was current on the payments. The court found that there would "be nothing to pass on after [Ms. Pryor] leaves the property because of the Medicaid lien and mortgage."

{¶10} The court found Mr. Pryor had "some concerns about being liable for the property because he is a 50% owner as a result of the probate court division." The court found the property had "no value" to Mr. Pryor. The court found that "[t]he property is only a short distance from the Belpre High School," and Mr. Pryor "would not be able to live within a [sic] 1,000 feet of a school as a convicted sex offender." The court found the property had "some value" to Ms. Pryor "as it provides her a place to reside, even though she most likely will never have any equity in the property."

{¶11} The court ordered that the property "be partitioned," with 100% going to Ms. Pryor, and 0% going to Mr. Pryor. The court ordered Ms. Pryor's counsel to prepare a judgment entry to effectuate the transfer and any required deed or other paperwork necessary for recording. After Mr. Pryor filed a notice of appeal from the court's decision, the court issued a judgment entry ordering that legal title to the property "is now vested in its entirety in the name of Nyowka Pryor as sole owner."[2]

## II. ASSIGNMENTS OF ERROR

{¶12} Mr. Pryor presents three assignments of error:

First Assignment of Error:  The trial court erred to the prejudice of Mr. Pryor's substantial constitutional and statutory rights, and exceeded its jurisdiction, by rendering judgment repartitioning the appellant's property where the trial court not only lacked jurisdiction to render the judgment, but the judgment is barred by the doctrine of res judicata.

Second Assignment of Error:  The trial court's decision violates Mr. Pryor's substantive due process rights, and is void for lack of notice.

Third Assignment of Error:  The trial court's decision violates Mr. Pryor's substantial due process rights and is based upon errors of law and fact.

---

[2] App.R. 4(C) states:  "A notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time period is treated as filed immediately after the entry."

### III.  FIRST ASSIGNMENT OF ERROR

{¶13}  In the first assignment of error, Mr. Pryor contends that the trial court erred to the prejudice of his substantial constitutional and statutory rights, and exceeded its jurisdiction, by rendering judgment "repartitioning" his property "where the trial court not only lacked jurisdiction to render the judgment, but the judgment is barred by the doctrine of res judicata."  Mr. Pryor maintains that he filed an action for access to the property, and the trial court improperly converted his action into one for partition, "which was a matter already decided by the Washington County Probate Court."  Mr. Pryor maintains that "[j]urisdiction to render a Probate Judgment is specifically reserved to the Probate Court." He then quotes R.C. 2101.24(A)(1)(c), which grants the probate court exclusive jurisdiction to "order the distribution of estates[.]"  He claims the probate court "rendered a decision partitioning the property" 50% to him and 50% to Ms. Pryor.  He asserts that the trial court lacks jurisdiction over probate matters, is not a court of appeals, and had no authority to overrule or supersede the probate court's judgment.  He claims the trial court's decision "[r]epartitioning the estate" and granting Ms. Pryor 100% ownership is "void ab initio for want of jurisdiction" and "barred by the doctrine of res judicata as neither party appealed" the probate court's judgment.  Mr. Pryor maintains that the trial court's only power was to compel Ms. Pryor to grant him access to the property and that the court lacked jurisdiction to deprive him "of his half of the property, or otherwise interfere."

### A.  Standards of Review

{¶14}  "'Subject-matter jurisdiction is defined as a court's power to hear and decide cases.'"  *In re L.S.*, 2020-Ohio-5516, ¶ 17 (4th Dist.), quoting *Fairland Assn. of Classroom Teachers, OEA/NEA v. Fairland Local School Bd. of Edn.*, 2017-Ohio-1098, ¶ 8 (4th

Dist.). A judgment entered by a court lacking subject-matter jurisdiction is void. *Id.* at ¶ 17. "'The existence of the trial court's subject-matter jurisdiction is a question of law that we review de novo.'" *Pack v. Pack*, 2021-Ohio-2233, ¶ 13 (4th Dist.), quoting *Yazdani-Isfehani v. Yazdani-Isfehani*, 2006-Ohio-7105, ¶ 20 (4th Dist.).

**{¶15}** "'Res judicata ensures the finality of decisions.'" *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 15, quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979). "It bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal in that prior proceeding." *Id.*, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990). "The res judicata doctrine ensures stability of judicial decisions, deters vexatious litigation, and allows courts to resolve other disputes." *Id.*, citing *Natl. Amusements, Inc.* at 62.

**{¶16}** The Supreme Court of Ohio has "adopted the modern application of the doctrine of res judicata, which includes claim preclusion and issue preclusion." *Id.* at ¶ 16, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995), citing 1 Restatement of the Law 2d, Judgments, § 24 and 25 (1982). "'Claim preclusion makes "'an existing final judgment or decree between the parties to litigation * * * conclusive as to all claims which were or might have been litigated in a first lawsuit.'"'" (Omission in original.) *Id.*, quoting *Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 22 (lead opinion), quoting *Natl. Amusements, Inc.* at 62, quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986). For claim preclusion to apply, four elements must be met:

> "'(1) [A] prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the

transaction or occurrence that was the subject matter of the previous action.'"

(Bracketed text in original.)  *Id.*, quoting *Lycan* at ¶ 23, quoting *Hapgood v. Warren*, 127 F.3d. 490, 493 (6th Cir. 1997).  "Issue preclusion, also known as collateral estoppel, prevents parties from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit."  *Id.*, citing *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). Issue preclusion is applicable "'when the fact or issue (1) was actually and directly litigated in the prior action[ and] (2) was passed upon and determined by a court of competent jurisdiction[ ] and (3) when the party against whom collateral estoppel is asserted was a party in privity with the party to the prior action.'"  (Bracketed text in original.) *Id.,* quoting *Thompson* at 183.  "We review de novo the question whether res judicata applies to a claim or issue." *Id.*, citing *Lycan* at ¶ 21.

### B.  Analysis

**{¶17}** The contention that the trial court improperly converted Mr. Pryor's action for access into one for partition lacks merits.  "Partition" means, inter alia, "[t]he act of dividing; esp., the division of real property held jointly or in common by two or more persons into individually owned interests." *Black's Law Dictionary* (12th Ed. 2024).  One form of relief the complaint requested was that Ms. Pryor give Mr. Pryor or his agent access to the residence with sole access to the garage.  However, the complaint indicated Mr. Pryor wanted access for the purpose of dividing the residence into two apartments, one for Mr. Pryor, and one for Ms. Pryor.  In addition, an alternative form of relief the complaint requested was for Ms. Pryor to buy Mr. Pryor's interest in the property, which is a possible resolution of a partition action.  *See* R.C. 5307.09.  Under these circumstances, we cannot conclude the trial court erred in interpreting Mr. Pryor's

complaint as seeking partition. We also observe that Mr. Pryor characterizes Ms. Pryor's counterclaim as requesting "in essence a partition of the residence." Thus, he acknowledges the issue of partition was before the trial court even though he denies raising it himself.

**{¶18}** The trial court had jurisdiction to partition the property. R.C. 5307.01 states: "Tenants in common, survivorship tenants, and coparceners, of any estate in lands, tenements, or hereditaments within the state, may be compelled to make or suffer partition thereof as provided in sections 5307.01 to 5307.25 of the Revised Code." R.C. 5307.02 states: "When the estate is situated in one county, the proceedings for partition shall be had in that county." R.C. 5307.03 states:

> A person entitled to partition of an estate may file his petition therefor *in the court of common pleas*, setting forth the nature of his title, a pertinent description of the lands, tenements, or hereditaments of which partition is demanded, and naming each tenant in common, coparcener, or other person interested therein, as defendant. When the title to such estate came to such person by descent or devise upon the death of an inhabitant of this state, a partition thereof shall not be ordered by the court within one year from the date of the death of such decedent, unless the petition sets forth and it is proved that all claims against the estate of such decedent have been paid, or secured to be paid, or that the personal property of the deceased is sufficient to pay them.

(Emphasis added.) Thus, common pleas courts, like the trial court, have "plenary jurisdiction in actions for the partition of realty." *Russell v. Russell*, 137 Ohio St. 153, 155 (1940), citing former G.C. 12028 (which is almost identical to R.C. 5307.03).

**{¶19}** The trial court did not violate the doctrine of res judicata. The trial court did not resolve a claim that was or could have been litigated in the probate court proceeding or resolve an issue which was actually and directly litigated in the probate court proceeding. The Washington County Probate Court did not partition the property. The

probate court issued a Certificate of Transfer indicating the real property at issued passed to the parties from their deceased mother, and each party received an undivided 50% interest in it. *See* R.C. 2113.61(A)(1) ("When real property passes by the laws of intestate succession or under a will, the administrator or executor shall file in probate court . . . an application requesting the court to issue a certificate of transfer as to the real property"); R.C. 2113.61(C) ("within five days following the filing of an application for a certificate of transfer that complies with division (B) of this section, the court shall issue a certificate of transfer for record in each county in this state in which real property so passing is situated . . ."). The trial court did not redetermine to whom the property passed upon the death of the parties' mother or what interest passed to them. The trial court acknowledged the parties each received an undivided 50% interest in the property through the Certificate of Transfer. The trial court exercised its own jurisdiction under R.C. 5307.03 to partition the property, which the statute specifically contemplates occurring after two or more people obtain title to real property by descent or devise, like the parties in this case.

{¶20} For the foregoing reasons, we overrule the first assignment of error.

## IV. SECOND ASSIGNMENT OF ERROR

{¶21} In the second assignment of error, Mr. Pryor contends the trial court's decision violates his substantive due process rights and is void for lack of notice. Mr. Pryor claims that "[i]n rendering its decision, the trial court considered matters that neither party, nor the court, raised, mentioned, argued, or even thought of in any written pleading or oral hearing, depriving [him] of his right to notice and opportunity to be heard on the subject[.]" Specifically, he asserts that the court found that he was a convicted rapist serving 30 years to life in prison, that the property had no value to him, that the property

was only a short distance from Belpre High School, and that he would not be able to live within 1,000 feet of a school. He suggests that the trial court's consideration of such matters renders its decision void.

**{¶22}** The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." "'Although "due process" lacks a precise definition, courts have long held that due process requires both notice and an opportunity to be heard.'" *Whitesed v. Huddleston*, 2021-Ohio-2400, ¶ 35 (4th Dist.), quoting *In re C.B.*, 2020-Ohio-5151, ¶ 11 (4th Dist.). "'The question of whether due process requirements have been satisfied presents a legal question we review de novo.'" *Superior Office Space, LLC v. Carpenter*, 2023-Ohio-967, ¶ 41 (4th Dist.), quoting *Flynn v. State Med. Bd. of Ohio*, 2016-Ohio-5903, ¶ 46 (10th Dist.).

**{¶23}** Mr. Pryor has not demonstrated that the trial court's decision violates his due process rights and is void for lack of notice. Mr. Pryor had notice of and an opportunity to be heard at the bench trial. After the bench trial, the trial court made findings of fact that Mr. Pryor was a convicted rapist serving 30 years to life in prison, that the property had no value to him, that the property was a short distance from a school, and that Mr. Pryor would not be able to live within 1,000 feet of a school as a convicted sex offender. Mr. Pryor suggests no argument or evidence was presented on such matters during the bench trial, but he did not provide a transcript of it for our review. "In the absence of a transcript, we must presume regularity in the trial court proceedings."

*State v. Kelly*, 2014-Ohio-5840, ¶ 12 (4th Dist.), citing *Mumma v. Cooper,* 2003-Ohio-2507, ¶ 5 (4th Dist.).  Accordingly, we overrule the second assignment of error.

## V.  THIRD ASSIGNMENT OF ERROR

**{¶24}**  In the third assignment of error, Mr. Pryor contends the trial court's decision violates his substantial due process rights and is based upon errors of law and fact.  Mr. Pryor maintains that if he had not been "deprived of notice" and "his right to be heard on the subject prior to the trial court having rendered its void judgment," he would have shown the court's decision "is incorrect and based upon errors of law and fact."  Mr. Pryor contends that the trial court's findings that the property had no value to him, that the property was a short distance from a school, and that he would not be able to live within 1,000 feet of a school are "not only untrue, but entirely irrelevant."  Mr. Pryor claims he has a court order stating he is not subject to the Adam Walsh Act, which contains the 1,000 feet residential restriction.  He suggests that even if that restriction applied to him, the Adam Walsh Act would not prevent him from residing on the property because Zillow and Google Maps show the school is 1,060 feet from the property line. He also asserts that even if he could not reside on the property, "[o]wnership of real property is not connected to the owner's ability, legal or otherwise, to reside at or on the real property." He claims nothing in Ohio or federal law prohibits him "from owning the property, renting it out, using it for storage, or just to hang out and spend his days, regardless of its proximity to any school."  Thus, he asserts the court's "assumption" that the property had no value to him, which was "made without any notice or input from the parties" is "incorrect for several reasons, and cannot form a valid legal basis for the Court to deprive [him] of his rightful inheritance."

{¶25} In addition, Mr. Pryor asserts that "[o]wnership of real property is not related to or dependent on the owners' ability to get along," and "nothing in the law allows a court to deprive an owner of property merely because he does not get along, and cannot reside, with a co-owner who resides at the property." He claims his son's relationship with Ms. Pryor is irrelevant to his ownership of the property. Mr. Pryor claims that Ms. Pryor "stole 'her' portion" of the property by engaging in conduct which resulted in the probate court discarding their mother's will, which largely disinherited Ms. Pryor. He maintains that the evidence shows Ms. Pryor "deliberately did everything she could, including manipulating 'facts' and evidence" to refuse him access to the property. He claims Ms. Pryor prevented him "from participating in essential functions related to the real property, refusing [his] offers to pay portions of repairs and the loan she insisted be in her name only." He asserts the trial court rewarded her "improper acts" by awarding her his "portion of their inheritance without the slightest compensation . . ., based solely upon [his] unfortunate condition," and despite the probate court judgment which "finally determined" that he "is 50% owner of the real property." He maintains that if the court "wanted to make a fair division of the property . . . it might have ordered [Ms. Pryor] to pay [him] half the value, in addition to half of the full value of rent for such time as she has resided in the home prior to the division of the property, rather than simply depriving [him] of all parts of his inheritance in what appears to be the sole basis of the court's perception of [him] as a 'convicted rapist.'" He claims the court improperly converted his complaint for access and rent to one for partition, "which is contrary to [his] interests, - as well as being in violation of law and without jurisdiction, - including his desire to maintain ownership of his parent's home, which itself has monetary value, as well as sentimental."

**{¶26}** We already rejected Mr. Pryor's claims that the trial court improperly converted his complaint to one for partition, lacked jurisdiction, violated the doctrine of res judicata, and violated his due process rights in our analysis of the first and second assignments of error. To the extent Mr. Pryor additionally challenges the accuracy of the trial court's findings of fact that the property had no value to him, that the home is a short distance from a school, and that he would not be able to live within 1,000 feet of a school as a convicted sex-offender, his contentions are not well-taken. He did not provide a transcript of the bench trial for our review, and "[i]f an appellant does not file a complete transcript, a reviewing court 'must presume that the findings of fact are correct and supported by the evidence.'" *Reproductive Gynecology, Inc. v. Wu*, 2023-Ohio-2557, ¶ 18 (10th Dist.), quoting *Barksdale v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-395, ¶ 17 (10th Dist.). Although Mr. Pryor claims evidence outside the record proves he can legally reside in the home, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. And while Mr. Pryor directs our attention to possible uses of the property by him other than as a residence, without a transcript, he cannot direct our attention to any evidence that the property in fact had value to him as a rental property, storage location, or "hang out" location even though the trial court found that the home was in very poor condition, that Ms. Pryor's use of the home as a residence prevented foreclosure on the Medicaid lien, and that Mr. Pryor is serving a 30 years to life prison sentence with parole eligibility in 8 years.

{¶27} Mr. Pryor's contention that the trial court erred by not ordering Ms. Pryor to pay him rent is not well taken. Mr. Pryor does not support this contention with citation to legal authority. And even if he had, without a transcript, he cannot show that he presented any evidence to establish the rental value of the property.

{¶28} Mr. Pryor also has not shown the trial court erred when it partitioned the property with 100% going to Ms. Pryor and 0% going to him and did not order her to pay him half the property value. "Although the right to partition is governed by statute, it remains an essentially equitable remedy committed to the discretion of the trial court." *Rothwell v. Rothwell*, 2018-Ohio-535, ¶ 16 (4th Dist.). "''In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy.' * * * It has the power to fashion any remedy necessary and appropriate to do justice in a particular case." (Omission in original.) *Redding v. Cantrell*, 2022-Ohio-567, ¶ 19 (12th Dist.), quoting *Byers v. Robinson*, 2008-Ohio-4833, ¶ 57 (10th Dist.), quoting *McDonald & Co. Secs., Inc. v. Alzheimer's Disease & Related Disorders Assn., Inc.*, 140 Ohio App.3d 358, 366 (1st Dist. 2000). "A court abuses its discretion when its decision results from an attitude that is unreasonable, arbitrary, or unconscionable." *State ex rel. Harris v. Bruns*, 2023-Ohio-2344, ¶ 21, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶29} Mr. Pryor has not demonstrated an abuse of discretion. Contrary to what Mr. Pryor suggests, the trial court did not reach its decision based solely on its "perception of [him] as a 'convicted rapist'" or because Ms. Pryor did not get along with him or his son. The trial court also found the property value was "much closer to the $10,000 comparative market analysis provided by" Ms. Pryor than the values provided by Mr. Pryor. The court found that if the property were sold to obtain its true market value, there would be nothing

to divide between the parties because the Medicaid lien of $79,755.58 and mortgage, which had a principal balance of $67,684.11, were "much greater than any of the estimated values of the property."  The court found the home had no value to Mr. Pryor, the home had some value to Ms. Pryor as a residence, though she would likely never have any equity in it, and Ms. Pryor's use of the home as her residence prevented foreclosure on the Medicaid lien.   The court also found that Ms. Pryor saved the home from foreclosure by assuming the mortgage in her name in August 2022 and that she was current on the $574.53 monthly mortgage payments.  This means she would have spent over $11,000 on mortgage payments at the time the court issued its decision in May 2024. And the court found that Ms. Pryor evicted squatters from the home and had been trying to make it habitable.

**{¶30}** One can infer the court concluded Mr. Pryor was not entitled to any compensation because he would get no money if the property were sold as the liens outweighed its value, and Ms. Pryor alone had paid the expenses for the property, which exceeded its value in the comparative market analysis.  Mr. Pryor cites no legal authority demonstrating the trial court erred in reaching this conclusion.  To the extent he suggests there is evidence of Ms. Pryor's wrongdoing, he does not, and cannot, support his contention with citation to the record given his failure to provide a transcript from the bench trial.

**{¶31}** For the foregoing reasons, we overrule the third assignment of error.

## VI.  CONCLUSION

{¶32} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**